UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| DANIEL SCOTT MAYNARD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.: 1:24-CV-229-DCLC-CHS |
| | ) | |
| LINCOLN COUNTY JAIL and | ) | |
| QUALITY CORRECTIONAL | ) | |
| HEALTH CARE, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

Before the Court are pro se prisoner Plaintiff Daniel Scott Maynard's complaint alleging violations of his civil rights under 42 U.S.C. § 1983 [Doc. 2] and his motion for leave to proceed *in forma pauperis* [Doc. 1]. For the reasons set forth below, the Court will grant Plaintiff's motion and dismiss the complaint for failure to state a claim upon which relief may be granted.

**I.     MOTION FOR LEAVE TO PROCEED *IN FORMA PAUPERIS***

Under the Prison Litigation Reform Act ("PLRA"), a prisoner bringing a civil action may apply for permission to file suit without prepaying the filing fee. *See* 28 U.S.C. § 1915(a). A review of Plaintiff's certified inmate trust account record demonstrates that he lacks sufficient financial resources to pay the filing fee in a lump sum [Doc. 1]. Accordingly, pursuant to 28 U.S.C. § 1915, the Court will **GRANT** Plaintiff's motion.

Plaintiff will be **ASSESSED** the civil filing fee of $350.00. The custodian of Plaintiff's inmate trust account will be **DIRECTED** to submit to the Clerk, 900 Georgia Avenue, Suite 309, Chattanooga, Tennessee, 37402 twenty percent (20%) of Plaintiff's preceding monthly income (or income credited to Plaintiff's trust account for the preceding month), but only when such monthly

income exceeds ten dollars ($10.00), until the full filing fee of three hundred fifty dollars ($350.00) has been paid to the Clerk. 28 U.S.C. §§ 1915(b)(2) and 1914(a).

To ensure compliance with this fee-collection procedure, the Clerk will be **DIRECTED** to mail a copy of this Memorandum and Order to the custodian of inmate accounts at the institution where Plaintiff is now confined and to the Court's financial deputy. This Order shall be placed in Plaintiff's prison file and follow him if he is transferred to another correctional institution.

## II.  SCREENING OF COMPLAINT

### A.  Screening Standards

Under the PLRA, district courts must screen prisoner complaints and *sua sponte* dismiss any claims that are frivolous or malicious, fail to state a claim for relief, or are against a defendant who is immune. *See, e.g.,* 28 U.S.C. §§ 1915(e)(2)(B) and 1915A; *Benson v. O'Brian*, 179 F.3d 1014 (6th Cir. 1999). The dismissal standard articulated by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) "governs dismissals for failure state a claim under [28 U.S.C. §§ 1915(e)(2)(B) and 1915A] because the relevant statutory language tracks the language in Rule 12(b)(6)" of the Federal Rules of Civil Procedure. *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). Thus, to survive an initial review under the PLRA, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

Courts liberally construe pro se pleadings filed in civil rights cases and hold them to a less stringent standard than formal pleadings drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, allegations that give rise to a mere possibility that a plaintiff might later establish undisclosed facts supporting recovery are not well-pled and do not state a plausible claim. *Twombly*, 550 U.S. at 555, 570. Further, formulaic and conclusory recitations of the elements of

2

a claim which are not supported by specific facts are insufficient to state a plausible claim for relief. *Iqbal*, 556 U.S. at 681.

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must establish that a "person" acting "under color of" state law deprived him of "any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983.

### B. Plaintiff's Allegations

Plaintiff was booked into the Lincoln County Jail on an undisclosed date in 2024 [Doc. 2, p. 3]. During the booking process, he noticed a rash on his torso and advised correctional and medical staff of that fact [*Id*. at 3–4]. He also informed them that he was on medication for a heart condition [*Id*. at 4]. "They" got Plaintiff's medications, and Plaintiff took them "every pill call" [*Id*.]. Plaintiff again informed a nurse about his rash, and she took photographs of it and said she would show the doctor [*Id*.]. That afternoon, the nurse told Plaintiff that the doctor prescribed him a cream to use on the rash for a period of seven days [*Id*.].

Plaintiff used the cream for five days and then informed the nurse that his rash was getting worse, and that he was dizzy upon standing or looking up [*Id*.]. The nurse checked Plaintiff's blood pressure, which was 90/80, and again photographed Plaintiff's rash [*Id*.]. The next day, the nurse told Plaintiff that the doctor "took [Plaintiff] off of some of [his] heart meds [and] put [him] on a[n] antibacterial soap for [seven] days" [*Id*.]. All of this was done without a doctor seeing Plaintiff in person or running any tests [*Id*.].

Plaintiff's blood pressure remained around 90/80, and his rash was still worsening [*Id*. at 4]. Plaintiff told a nurse, and she advised him to fill out a sick call, which he did [*Id*. at 5]. Then on May 31, 2024, the nurse told Plaintiff that the doctor wanted to see him on June 5, 2024 [*Id*.]. But on June 5, 2024, Plaintiff was seen by a nurse practitioner, who did not run any tests [*Id*.].

Instead, she prescribed Plaintiff a seven-day course of steroids for his rash and ordered his blood pressure checked for seven days [*Id*.]. She also ordered blood work [*Id*.]. And on June 11, 2024, "they" came to Plaintiff's cell and told him he was being moved "because they found out that the rash was syphil[]is" [*Id*.]. Plaintiff was moved to a lock-up cell and was placed on antibiotics for twenty-eight days [*Id*.].

The syphilis "could have been eating at [Plaintiff's] brain[,]" and something is now wrong with his right eye, but Plaintiff does not know what caused it or whether it will heal [*Id*.]. And he will not know what is wrong with his eye until he can get out of jail and go to his own doctor [*Id*.].

Aggrieved, Plaintiff filed the instant suit against the Lincoln County Jail and its medical provider, Quality Correctional Health Care, asking the Court to "find that there was neglect" in his case, to order "future inmates to get better medical care[,]" to order "any future hospital bills to be taken care of" if it pertains to his syphilis diagnosis, and to order he be compensated for his pain and suffering [*Id*. at 6].

C.    Analysis

Plaintiff does not disclose whether he is a convicted prisoner or a pretrial detainee. A convicted prisoner derives his constitutional protections from the Eighth Amendment to the United States Constitution, while a pretrial detainee derives his constitutional protections from the Due Process Clause of the Fourteenth Amendment. *Richmond v. Huq*, 885 F.3d 928, 937 (6th Cir. 2018). The due process afforded to detainees protects them from being "punished prior to an adjudication of guilt." *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). Despite the distinct constitutional provisions protecting the differing custodial designations, the protection offered by the Due Process Clause is "similar if not greater" than those afforded by the Eighth Amendment. *Spencer v. Bouchard*, 449 F.3d 721, 727 (6th Cir. 2006) (citing *Cnty. of Sacramento v. Lewis*, 523

4

U.S. 833, 849–50 (1998)); *see also Griffith v. Franklin Cnty.*, 975 F.3d 554, 566 (6th Cir. 2020). Therefore, the Court will assume for screening purposes that the protections of the Fourteenth Amendment apply to Plaintiff's claims.

Plaintiff has named the Lincoln County Jail and Quality Correctional Health Care as Defendants in this action [Doc. 2]. But a jail is a building, not a "person" subject to liability under § 1983. *Cage v. Kent County Corr. Facility*, No. 96-1167, 1997 WL 225647, at *1 (6th Cir. May 1, 1997) ("The district court also properly found that the jail facility named as a defendant was not an entity subject to suit under § 1983."). Lincoln County, however, is a suable entity. And Quality Correctional Health Care is also presumably a proper Defendant, as where a private entity contracts with the state to perform a traditional state function (such as providing medical care at a penal institution), it acts under color of state law and may be sued under 42 U.S.C. § 1983. *See Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). But to hold either of these entities liable, Plaintiff must demonstrate that "a policy or well-settled custom of the company [or County] was the 'moving force' behind the alleged deprivation" of his rights. *Braswell v. Corrections Corp. of America*, 419 F. App'x 622, 627 (6th Cir. 2011); *Monell v. Dep't of Soc. Servs*, 436 U.S. 658, 708 (1978) (Powell, J., concurring) (explaining a municipality can only be held liable for harms that result from a constitutional violation when that underlying violation resulted from "implementation of [its] official policies or established customs").

Here, Plaintiff has not alleged any facts that allow a plausible inference that he was denied necessary medical interventions because of some official policy or custom of Lincoln County or Quality Correctional Health Care. Accordingly, these Defendants should be dismissed.

Additionally, the Court otherwise finds that Plaintiff's allegations fail to state a cognizable § 1983 claim. A pretrial detainee states a claim that his right to constitutionally adequate medical

5

care was violated by showing that (1) he had a sufficiently serious medical need to which (2) the defendant "acted deliberately (not accidentally), [and] also recklessly 'in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known.'" *Helphenstine v. Lewis Cnty.*, 60 F.4th 305, 317 (6th Cir. 2023) (citation omitted) (alterations in original). As to the first component, a medical need is deemed sufficiently serious if it has been diagnosed by a doctor as requiring treatment or is so obvious that even a lay person would recognize the need for medical attention. *Greene v. Crawford Cnty.*, 22 F.4th 593, 607 (6th Cir. 2022) (internal quotation marks and citation omitted). A defendant displays the requisite culpability to satisfy the second component when his "'action (or lack of action) was intentional (not accidental) and []he either (a) acted intentionally to ignore [the detainee's] serious medical need, or (b) recklessly failed to act reasonably to mitigate the risk the serious medical need posed to' the detainee." *Id.* (citing *Brawner v. Scott Cnty.*, 14 F.4th 585, 597 (6th Cir. 2021)).

Here, neither jail nor medical staff either intentionally ignored Plaintiff's serious medical needs or recklessly failed to act reasonably to mitigate a risk to Plaintiff. Plaintiff informed medical staff of his need for medication for his heart and a rash, and he received treatment for both. When the treatment for his rash proved ineffective, nursing staff relayed that fact to a physician, who prescribed additional medication. And when that medication seemed to worsen the condition, alternative medical intervention was ordered. Thereafter, Plaintiff again complained about his rash and was advised to fill out a sick call form, which he did, and which resulted in a medical evaluation that led to his diagnosis and prescribed course of treatment. Therefore, Plaintiff was treated each time he complained of medical issues, and his disagreement with the adequacy

6

of that treatment fails to raise a constitutional issue.[1]  *See Westlake v. Lucas*, 537 F.2d 857, 860 (6th Cir. 1976) ("Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law.").  This is true even if Defendants' conduct was negligent, as Plaintiff contends, because "negligence is insufficient" to raise a constitutional issue.  *Brawner*, 14 F.4th at 596; *see also Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997) (finding "[m]isdiagnoses, negligence, and malpractice" are not "tantamount to deliberate indifference").  Accordingly, Plaintiff's complaint will be **DISMISSED** for failure to state a claim upon which relief may be granted.

### III. CONCLUSION

For the reasons set forth above:

1. Plaintiff's application for leave to proceed *in forma pauperis* [Doc. 1] is **GRANTED**;

2. The custodian of Plaintiff's inmate trust account is **DIRECTED** to submit the filing fee to the Clerk in the manner set forth above;

3. The Clerk is **DIRECTED** to mail a copy of this Memorandum and Order to the custodian of inmate accounts at the institution where Plaintiff is now confined and to the Court's financial deputy;

4. Plaintiff's complaint is **DISMISSED** without prejudice because it fails to state a claim upon which relief may be granted; and

5. The Court **CERTIFIES** that any appeal from this action would not be taken in good faith and would be totally frivolous.  *See* Rule 24 of the Federal Rules of Appellate Procedure.

**SO ORDERED.**

---

[1] Also, while Plaintiff mentions that "something [is] wrong with [his] right eye[,]" [Doc. 2 p. 5] he does not allege that he has sought medical treatment for that condition and been denied care.  Therefore, this allegation fails to raise a constitutional issue.

7

**ENTER:**

s/Clifton L. Corker
United States District Judge